UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION<br><br>This document relates to: All Cases. | MASTER DOCKET<br><br>18-md-2865 (LAK) |

# PLAINTIFF SKATTEFORVALTNINGEN'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR LEAVE TO AMEND ITS COMPLAINTS

HUGHES HUBBARD & REED LLP
William R. Maguire
Marc A. Weinstein
Neil J. Oxford
One Battery Park Plaza
New York, New York 10004
(212) 837-6000

*Counsel for Plaintiff Skatteforvaltningen (Customs and Tax Administration of the Kingdom of Denmark)*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..............................................................................................1

BACKGROUND ..................................................................................................................2

The Proposed Additional Defendants ...................................................................................3

    Markowitz, van Merkensteijn and Klugman ................................................................3

    Ben-Jacob..........................................................................................................................4

    Acer Investment Group...................................................................................................4

    Plan Participants..............................................................................................................5

The Proposed Additional Allegations of Fraudulent Misstatements ...............................6

ARGUMENT..........................................................................................................................8

I.    JUSTICE REQUIRES GRANTING SKAT LEAVE TO AMEND ITS COMPLAINTS. ...................................................................................................................9

II.    GRANTING SKAT LEAVE TO AMEND ITS COMPLAINTS WILL NOT UNDULY PREJUDICE THE DEFENDANTS..............................................................11

CONCLUSION....................................................................................................................13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 87 F. Supp. 2d 281 (S.D.N.Y. 2000) ...............................................................................................................................11, 12

*Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448 (S.D.N.Y. 2016) ........................9, 11, 12, 13

*Banco Central del Paraguay v. Paraguay Humanitarian Found., Inc.*, No. 01 Civ. 9649 (JFK) (FM), 2003 WL 21543543 (S.D.N.Y. July 8, 2003) ............................................12

*Bridgeport Music, Inc. v. Universal Music Grp., Inc.*, 248 F.R.D. 408 (S.D.N.Y. 2008) ...............................................................................................................................10

*Brown v. City of New York*, No. 13-cv-6912 (TPG), 2015 WL 7253874 (S.D.N.Y. Nov. 13, 2015) .................................................................................................................9

*Foman v. Davis*, 371 U.S. 178, 83 S. Ct. 227 (1962) .............................................................8, 9, 11

*Friedl v. City of New York*, 210 F.3d 79 (2d Cir. 2000) ..................................................................9

*JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, No. 08 Civ. 9116 (PGG), 2009 WL 1357946 (S.D.N.Y. May 12, 2009) .............................................................................11

*Kleeberg v. Eber*, 331 F.R.D. 302 (S.D.N.Y. 2019) .......................................................................9

*Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193 (S.D.N.Y. 2014) ........................................12

*In re Skat Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300 (S.D.N.Y. 2019) ................................13

*In re United Brands Co. Secs. Litig.*, No. 85 Civ. 5445 (JFK), 1990 WL 16164 (S.D.N.Y. Feb. 15, 1990) ..........................................................................................................9

*Williams v. Citigroup Inc.*, 659 F.3d 208 (2d Cir. 2011) ................................................................8

**Statutes and Rules**

Federal Rule of Civil Procedure 15(a)(2) ...................................................................................8, 9

Federal Rule of Civil Procedure 21 .................................................................................................9

Plaintiff Skatteforvaltningen ("SKAT") respectfully submits this memorandum of law in support of its motion for leave to amend its complaints.

## PRELIMINARY STATEMENT

Plaintiff SKAT requests leave to amend its complaints, for the first time, in the 184 actions in these consolidated proceedings: (i) to name as defendants in certain cases additional U.S.-domiciled entities and individuals SKAT has now identified as participating in the fraudulent scheme; and (ii) to allege that in addition to falsely representing that the defendant pension plans owned shares of Danish stock and received dividends on those shares from which tax was withheld, the defendants also misrepresented to SKAT that the plans met the requirements in the tax treaty between the United States and Denmark to be entitled to refunds in the first place.

Leave to amend should be "freely given" and rarely denied, particularly where, as here, discovery is ongoing and the amendments arise from the same operative facts as the allegations in the original pleadings, and are based on information learned since the original pleadings were filed. Given the permissive standard for granting leave to amend, the Court should grant SKAT's motion. SKAT has not delayed in making this motion; rather, SKAT brings this motion by the March 27, 2020 deadline for amending pleadings/joining additional parties that the parties proposed jointly to the Court just a few weeks ago.

Nor will granting SKAT leave to file its proposed amended complaints unduly prejudice the defendants, current or new. SKAT is not alleging any new causes of action. The proposed fact discovery deadline in these consolidated proceedings is December 15, 2020, more than eight months away. There is no reason the parties cannot complete the additional discovery warranted by the amendments before that deadline, so granting SKAT leave to amend its complaints will not prolong these cases. Further, granting SKAT leave to file its proposed amended complaints

will not require the defendants to expend significantly more resources to conduct discovery. The new allegations and claims against the new defendants in the proposed amended pleadings arise from the same fraudulent refund applications as the original pleadings, so granting this motion will not expand significantly the scope of discovery.

## BACKGROUND

This multi-district litigation comprises 184 actions alleging that the defendant pension plans and associated individuals and entities participated in a scheme to submit fraudulent applications for refunds of tax withheld from dividends issued by Danish companies to their shareholders.[1] The defendants' refund applications each included a "dividend credit advice," or other similar document, purporting to show the pension plan owned shares of Danish stock and suffered withholding tax on dividends issued on its shares.[2] The refund applications claimed that the plans were entitled to a refund of the withheld tax under the tax treaty between the United States and Denmark (the "Treaty")[3] because each plan was a qualified pension plan under United States law.[4] The complaints allege the applications were fraudulent because the pension plans did not own the underlying shares of Danish stock, and so received no dividends and suffered no withholding tax.[5]

---

1. *See generally, e.g.*, Compl., *SKAT v. The Aria Pension Plan* (No. 18-cv-05147-LAK), ECF No. 1.

2. *Id.*

3. Protocol Amending Tax Convention with Denmark, U.S.-Den., May 2, 2006, Treaty Doc. No. 109-19 (amending Convention and Protocol between the United States and Denmark for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, U.S.-Den., Aug. 19, 1999, Treaty Doc. No. 106-12).

4. *See, e.g.*, Compl., *SKAT v. The Aria Pension Plan* (No. 18-cv-05147-LAK), ECF No. 1.

5. *Id.* ¶ 4.

**The Proposed Additional Defendants**

SKAT seeks to add the following categories of additional defendants: (i) current defendants Richard Markowitz ("Markowitz"), John van Merkensteijn ("van Merkensteijn"), Robert Klugman ("Klugman") and/or entities controlled by them, to additional cases; (ii) current defendant Michael Ben-Jacob ("Ben-Jacob") to additional cases; (iii) proposed new defendant Acer Investment Group, LLC ("Acer"); and (iv) current and proposed new plan participant defendants.

**Markowitz, van Merkensteijn and Klugman**

In February 2019, SKAT sued each of Markowitz, van Merkensteijn and Klugman multiple times in connection with pension plans for which they were the identified authorized representatives or plan participants. Discovery has revealed that these three individuals played significant roles behind the scenes for 26 other pension plan defendants.

For each of these 26 pension plans, some or all of Markowitz, van Merkensteijn and Klugman entered into partnership agreements with the plan pursuant to which they, rather than the pension plan or the plan's participants, received the large majority of the pension plan's fraudulent proceeds. Markowitz, van Merkensteijn, and Klugman were not participants in or authorized representatives of any of the 26 plans, and their names did not appear on any of the refund claim documentation submitted to SKAT for these 26 pension plans. It was only during discovery that SKAT first learned of these defendants' roles with respect to the 26 plans. In addition, SKAT proposes to add as defendants in these 26 cases certain entities that these three

3

defendants controlled.  (Declaration of Marc A. Weinstein, dated March 27, 2020 ("Weinstein Decl.") Ex. A ¶¶ 9(b), 53-62.)[6]

**Ben-Jacob**

SKAT originally sued defendant Ben-Jacob in connection with 29 pension plans. Discovery has revealed that Ben-Jacob participated in the coordination of certain aspects of the fraudulent scheme on behalf of an additional 10 plans.  Thus, SKAT proposes to add Ben-Jacob as a defendant in each of those cases.  Among other things, Ben-Jacob structured the partnership agreements among Markowitz, van Merkensteijn, Klugman, and the pension plans, at times directed the broker-custodians to send the fraudulent proceeds to these partners despite his knowledge that the partners were not participants in the plan, and at various times executed critical documents on behalf of the pension plans as "attorney-in-fact."  (Weinstein Decl. Ex. B ¶¶ 48-53.)[7]

**Acer Investment Group**

Existing defendant Stacey Kaminer was a Member and the Chief Compliance Officer of Acer, an investment advisory firm.  SKAT has learned in discovery that at least nine of the defendant pension plans granted Acer authority to act as their representative and agent with respect to ED&F Man Capital Markets Limited ("ED&F"), and Acer used this authority to direct

---

6. Rather than attach 184 proposed amended complaints to this motion, SKAT has attached one sample amended complaint, blacklined against the initial complaint in that action, for each category of proposed amendment.  In addition to the proposed amendments described in this motion, the blacklines also show the other non-substantive amendments SKAT would make.  Exhibit A to the Weinstein Declaration is an example of one of SKAT's proposed amended complaints naming the pension plan's partners (in that case, Klugman, Markowitz, RAK Trust and Routt Trust) as defendants.  The other actions in which SKAT proposes to add the plan's partners as defendants are set forth in the schedule to the Weinstein Declaration.

7. Exhibit B to the Weinstein Declaration is an example of one of SKAT's proposed amended complaints naming Ben-Jacob as a defendant.  The other actions where SKAT proposes to add Ben-Jacob as a defendant are set forth in the schedule to the Weinstein Declaration.

4

ED&F how to allocate purported shares of Danish securities among the defendant plans, which formed the basis of the fraudulent dividend credit advices submitted to SKAT. ED&F has admitted that most of the dividend credit advices issued with respect to refund applications on which Acer acted as "investment advisor" were false. Acer received a percentage of the total refunds SKAT paid to the plans, which percentage was significantly greater than the amount received by the pension plans themselves. (Weinstein Decl. Ex. C ¶¶ 61-62.)[8]

**Plan Participants**

Finally, SKAT seeks to amend 68 complaints to include as defendants the pension plans' participants where SKAT has confirmed through discovery that the individual was either the sole participant, or one of only two participants, in the pension plan. In certain cases, that individual had already been sued *qua* the pension plan's authorized representative or other role, and SKAT seeks to amend to allege that the individual was also the plan's participant. (Weinstein Decl. Ex. D ¶¶ 19, 48.) In other cases, SKAT seeks to add the newly identified plan participant as a new defendant. For example, in *SKAT v. Blue Ocean Equity LLC Retirement Plan* (No. 18-cv-03207), SKAT has learned that in addition to the existing individual defendant Kevin Kenning, Todd Bergeron was also a participant in the plan. SKAT seeks to add Mr. Bergeron as a new defendant in that case, and to allege Mr. Kenning's additional role as a plan participant. (Weinstein Decl. Ex. D ¶¶ 20, 48-49.)[9]

---

8. Exhibit C to the Weinstein Declaration is an example of one of SKAT's proposed amended complaints naming Acer as a defendant. The other actions where SKAT proposes to add Acer as a defendant are set forth in the schedule to the Weinstein Declaration.

9. Exhibit D to the Weinstein Declaration is an example of one of SKAT's proposed amended complaints alleging both the authorized representative defendant's role as one of the plan's participants and naming the plan's other participant as a defendant. The actions where SKAT proposes to (i) add similar allegations against the authorized representative defendants or others previously sued in connection with a specific plan, or (ii) add plan participants Alexander Burns, Bradley Crescenzo, Darren Wittwer, Kevin Kenning, Louise Kaminer,

5

**The Proposed Additional Allegations of Fraudulent Misstatements**

SKAT also seeks leave to amend each of its 184 complaints to allege that in addition to falsely claiming to have suffered withholding tax on dividends that they did not receive on stocks they did not own, each of the defendants' refund applications also made the false representation that the plan was "a qualified U.S. pension plan entitled to a full refund under the Treaty." (Weinstein Decl., Ex. A ¶ 44.)[10]

In fact, many of the defendant pension plans were a complete sham. They did not remotely resemble a qualified 401(k) retirement savings plan established for the exclusive benefit of employees to gradually accumulate retirement savings over years of employment. Instead, the plans were formed, along with limited liability companies purporting to be "plan sponsors," for one purpose and one purpose only—to submit refund claims to SKAT. The "plan sponsors" were not actual employers, and the plans did not act exclusively for the benefit of "employees." In fact, the vast majority of the fraudulent proceeds went to participants in the scheme other than the pension plans. As a result, as set forth in the proposed amended pleadings, the defendants' representations to SKAT that the plans were "qualified pension plans" entitled to benefits under the Treaty were false because the plans "did not meet the criteria for a qualified pension plan set forth in section 401(a) of the Internal Revenue Code and purportedly carried on debt-financed activities in breach of the Treaty's prohibition on such activities by a pension plan." (*Id*. ¶¶ 34, 44.) Specifically, the amended pleadings allege that the plans were not "qualified pension plan[s]" because the plans (i) "did not operate for the exclusive benefit of the

---

Robert Crema, Robert Klugman, Sander Gerber, Scott Goldstein or Todd Bergeron as a defendant are set forth in the schedule to the Weinstein Declaration.

10. Exhibit A to the Weinstein Declaration is an example of one of SKAT's proposed amended complaints including its new allegations concerning the pension plan's status under U.S. law.

6

sponsoring entity's employees and their beneficiaries;" (ii) were "not established with the intent that" they "be a 'permanent' program;"[11] and (iii) were "not properly funded."  (*Id.* ¶¶ 46-48.)

For instance, defendant Svetlin Petkov testified at his deposition that, in 2014 and 2015, he created five limited liability companies and pension plans for the purpose of submitting refund applications to SKAT.[12]  The companies had no employees and conducted no business.[13]  Neither Petkov, the plans he created, nor the sponsoring companies provided any funds to purchase the Danish securities the plans purported to own in the refund applications.[14]  Of the DKK 136,459,042.60, or approximately $21,366,000, SKAT paid in response to those five plans' refund applications, Petkov and the plans received only $650,000.[15]  Instead, the lion's share of the plans' refunds were transferred from the plans' account at Solo Capital Partners

---

11. The amended pleadings contain some variations of these allegations based on the facts and circumstances of each particular case.  For example, there are certain of the defendant pension plans or group trusts which were formed earlier than the fraudulent scheme and presumably for purposes other than the fraudulent scheme, but in carrying out the scheme violated various requirements to be a qualified pension plan or group trust entitled to benefits under the Treaty.

12. Weinstein Decl. Ex. E (Petkov Dep. Tr. 68:23-69:12, Feb. 5, 2020 (Q: "Do you recall how many pension plans you established in connection with this dividend arbitrage strategy?"  A: "In which year?  2014?"  Q: "Let's start with that, sure."  A: "Two in 2014." . . . Q: "Did you establish any additional plans after 2014 in connection with the dividend arbitrage strategy?"  A: "I established three more plans that were a part of the dividend strategy, yes.")).

13. *See, e.g.*, *id.* at 73:22-23 (Q: "Did the LLC have any employees?"  A: "Just me."), 82:21-83:12 (Q: "Why did you establish a second plan in July of 2014?"  A: "I don't remember exactly."  Q: "Do you recall any purpose other than to implement the dividend arbitrage strategy?" . . . A: "No, I don't remember what I was thinking exactly back then."  Q: "Was at least one purpose the implementation of the dividend arbitrage strategy?"  A: "Yes, that right."  Q: "Okay.  And as you sit here today, you just don't recall any other purposes?"  A: "I mean, I don't specifically recall anything else, no."), 84:6-13 (Q: "Did the SPKK, LLC have any business?"  A: "I don't remember." . . . Q: "Did it have any employees?"  A: "Just me.").

14. *Id.* at 139:20-140:8 (Q: "You personally did not put up any funding or capital in order to cause the plans to trade.  Is that right?" . . . A: "I did not put any personal money into the custodian accounts at Solo.  No, I did not."  Q: "And did the LLCs, the plan sponsors, provide funding for the plan in order for it to enter into the transactions that were done on its behalf?" . . . A: "No, no.").

15. *Id.* at 181:25-182:6 (Q: "And other than the 600,000 from Mr. Lehman, and then the 50,000 from Mr. Godson, forgetting about where they may have gotten the money, did you or your plans receive money from any other entities in connection with the dividend strategy?"  A: "No.").

7

LLP, an entity controlled by Sanjay Shah, to Ganymede Cayman Limited, another entity SKAT understands Shah controlled.[16]

Defendant Carl Vergari similarly testified during his deposition that he created defendant NYCATX LLC Solo 401K Plan and its sponsoring limited liability company solely to submit tax refund applications to foreign governments. The company did not conduct any business and had no employees, and the pension plan did not receive any proceeds from its purported securities trading.[17] Neither Vergari nor the NYCATX plan provided any funds to purchase the Danish securities the plan purported to own in its refund applications.[18] Of the approximately DKK 35,408,698.21, or approximately $5.5 million, SKAT paid in response to NYCATX's refund applications, Vergari received only approximately $140,000.[19]

## ARGUMENT

Federal Rule of Civil Procedure 15(a)(2) instructs that the Court "should freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). This "permissive standard" reflects the "strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (internal quotation omitted).

---

16. *See, e.g.*, *id.* at 186:18-187:14 (Q: "Were you aware of any services agreement between Ganymede and the Petkov Management Plan?" A: "No, I was not." .... Q: "Do you know why, according to these documents, the Petkov Management Plan paid Ganymede Cayman Limited 32.2 million kroner in August 2014?" A: "I do not.").

17. Weinstein Decl. Ex. F (Vergari Dep. Tr. 16:8-12, Feb. 12, 2020 ("I was told to create a plan to be involved in an investment opportunity."), 31:3-6 (Q: "Was that LLC formed for any other purpose other than to take advantage of this investment opportunity?" A: "No, it wasn't."), 42:20-24 (Q: "Did NYCATX, LLC conduct any business?" A: "No." Q: "Did it employ anyone?" A: "No."), 111:13-16 (Q: "So as a result of the various trading that happened on behalf of the plan, did the plan get any money?" A: "Not to my knowledge, no.")).

18. *Id.* at 68:10-14 (Q: "So was it your understanding that Solo Capital would provide the money to purchase shares on the plan's behalf?" ... A: "Yes.").

19. *Id.* at 162:20-163:2 (Q: "So in connection with those five claim forms, SKAT paid an approximate equivalent of 5.5 million U.S. dollars. And your testimony is that what you or your plan received at the end of the day from that was a little under $140,000. Is that right?" A: "Yes.").

8

Whether to grant leave to amend is within the Court's discretion, *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962), but leave should not be denied "unless there is a substantial reason to do so, such as excessive delay, prejudice to the opposing party, or futility." *Friedl v. City of New York*, 210 F.3d 79, 87 (2d Cir. 2000).

Where, as here, the proposed amended pleading seeks to add additional defendants, Rule 21 governs, which "permits such joinder 'at any time, on just terms.'" *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016) (quoting Fed. R. Civ. P. 21). "The same liberal standard for amending pleadings under Rule 15(a) applies to the joinder of parties under Rule 21." *Kleeberg v. Eber*, 331 F.R.D. 302, 315 (S.D.N.Y. 2019).

## I.   JUSTICE REQUIRES GRANTING SKAT LEAVE TO AMEND ITS COMPLAINTS.

The Court's inquiry "begins with the presumption that" leave "should be granted unless good reason exists to deny it." *In re United Brands Co. Secs. Litig.*, No. 85 Civ. 5445 (JFK), 1990 WL 16164 at *2 (S.D.N.Y. Feb. 15, 1990); *accord Foman*, 371 U.S. at 182, 83 S. Ct. at 230 (absent "undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . futility of amendment, etc.—the leave sought should . . . be 'freely given'").

There is no good reason to deny SKAT leave to amend its complaints. SKAT has not delayed in making this motion, has not failed to cure deficiencies by prior amendments, and has no bad faith or dilatory motive. SKAT makes this motion by the deadline for amending pleadings and joining parties that the parties agreed on and proposed jointly to the Court. (*See* Letter to Judge Kaplan from Marc A. Weinstein, *In re SKAT* (No. 18-md-02685-LAK), ECF No. 279.)  Further, this is SKAT's first request for leave to amend its complaints. *See Brown v. City of New York*, No. 13-cv-6912 (TPG), 2015 WL 7253874, at *1 (S.D.N.Y. Nov. 13, 2015) ("It is

9

rare that . . . leave should be denied, especially where there has been no prior amendment." (internal quotation omitted)).

Courts "have consistently granted motions to amend where, as here," the proposed amendments are based on information "developed during discovery, are closely related to the original claim, and are foreshadowed in earlier pleadings." *Bridgeport Music, Inc. v. Universal Music Grp., Inc.*, 248 F.R.D. 408, 415 (S.D.N.Y. 2008) (internal quotation omitted). Since filing the original complaints, SKAT has discovered that, as set forth in its proposed amended pleadings, (i) certain defendants had key behind-the-scenes roles with additional plans even though those defendants' names did not appear in the refund submissions to SKAT for those plans, (ii) Ben-Jacob had roles with significantly more plans than originally known, and (iii) Acer received a significant portion of the proceeds from payments made to various plans. SKAT also has identified the plan participants for many of the plans. (*See supra* pgs. 3-5.)

Similarly, SKAT's allegations in its proposed amended pleadings that the defendant plans were not qualified pension plans entitled to refunds under the Treaty are informed by the discovery conducted thus far. SKAT's amended pleadings allege that in most cases, the plan was a "sham entity sponsored by a shell company . . . created solely for the purpose of submitting false refund claims to SKAT" and "for the benefit of its custodians . . . and/or other entities and individuals who were participants in the fraud." (Weinstein Decl. Ex. A ¶¶ 45-46.)[20] These allegations are borne out by the depositions SKAT has taken thus far in these proceedings.

---

20. Discovery indicates that in some cases defendants used a pre-existing plan or group trust that had been established for purposes other than participating in the fraud. In those cases, SKAT's amended pleadings allege that the defendants used a pre-existing plan or group trust to perpetrate the fraud and, notwithstanding the pre-existing activities, misrepresented to SKAT that the plan or group trust was a qualified pension plan or group trust and entitled to full refunds under the Treaty. (*See, e.g.*, Weinstein Decl. Ex. C ¶¶ 41-45.)

10

Further, SKAT's allegations against the new defendants in its proposed amended complaints arise out of the same operative facts—the plans' fraudulent refund applications—as its claims in its original pleadings.

Finally, granting SKAT leave to add the new defendants named in its proposed amended complaints will "serve the interest of judicial economy" by allowing SKAT "to avoid initiating" parallel actions against the new defendants and permitting the Court to "adjudicate[e] the entire dispute" arising from each pension plan's fraudulent refund applications "in one action." *JPMorgan Chase Bank, N.A. v. IDW Grp., LLC*, No. 08 Civ. 9116 (PGG), 2009 WL 1357946, at *6 (S.D.N.Y. May 12, 2009) (internal quotation omitted) (granting leave to amend pleading to add new defendants because "the proposed amendment arises from the same operative facts as the claims and events described in the original complaint").

## II.   GRANTING SKAT LEAVE TO AMEND ITS COMPLAINTS WILL NOT UNDULY PREJUDICE THE DEFENDANTS.

"[P]rejudice alone is insufficient to justify a denial of leave to amend; rather, the necessary showing is '*undue* prejudice to the opposing party.'" *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000) (quoting *Foman*, 371 U.S. at 182, 83 S. Ct. at 230). In determining whether "such prejudice exists, courts evaluate whether the amendment would (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; [or] (ii) significantly delay the resolution of the dispute." *Agerbrink*, 155 F. Supp. 3d at 454 (internal quotation omitted). The Court "weigh[s] any potential prejudice to the opposing party against the prejudice that the moving party would experience if the amendment were denied." *Id.* The defendants, as the "non-moving party," bear "the burden of demonstrating that substantial prejudice would result were the proposed amendment to be granted." *Id.* (internal quotation omitted).

Defendants cannot show any prejudice, let alone meet their burden to show *undue* prejudice, will result if the Court grants SKAT leave to file its proposed amended complaints. The proposed amended complaints will not significantly delay resolution of these actions. Under the parties' jointly proposed schedule, the deadline for the completion of fact discovery is December 15, 2020, more than eight months away. *Cf. Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 200 (S.D.N.Y. 2014) ("A court is more likely to find an amendment prejudicial if discovery has closed."). There is no reason that the parties cannot complete within that deadline additional discovery on SKAT's claims against the new defendants and its additional allegations against the current defendants. *See Agerbrink*, 155 F. Supp. 3d at 454 ("although the amendment may warrant additional discovery, it should not significantly prolong the resolution of the action").

Nor will SKAT's proposed amended complaints require the defendants to expend significant additional resources to conduct discovery or prepare for trial. The amended pleadings will not expand significantly the scope of discovery in these actions as the new allegations arise from the same operative facts SKAT pleaded in its initial complaints. *See A.V. by Versace*, 87 F. Supp. 2d at 299 (granting leave to amend where claims against new defendants "do not raise factual claims unrelated to the events" in the original pleadings). Further, the "claims against" the new defendants are substantially "the same as those against the" current defendants, and the current defendants "therefore will not have to undertake additional discovery as a result of the amendment[s], and the new defendants will likely find that much of the discovery they might seek has already been satisfactorily completed." *Banco Central del Paraguay v. Paraguay*

12

*Humanitarian Found., Inc.*, No. 01 Civ. 9649 (JFK) (FM), 2003 WL 21543543, at *4 (S.D.N.Y. July 8, 2003).[21]

## **CONCLUSION**

For the reasons set forth above, SKAT respectfully requests that the Court grant its motion for leave to file its proposed amended complaints. Because SKAT seeks leave to amend 184 complaints, SKAT further requests that it be permitted 14 days to file the amended complaints should the Court grant its motion.

Dated: New York, New York
March 27, 2020

HUGHES HUBBARD & REED LLP

By: /s/ Marc A. Weinstein
William R. Maguire
Marc A. Weinstein
Neil J. Oxford
One Battery Park Plaza
New York, New York 10004-1482
Telephone: (212) 837-6000
Fax: (212) 422-4726
bill.maguire@hugheshubbard.com
marc.weinstein@hugheshubbard.com
neil.oxford@hugheshubbard.com

*Counsel for Plaintiff Skatteforvaltningen (Customs and Tax Administration of the Kingdom of Denmark)*

---

21. Nor are SKAT's proposed amended pleadings futile. *See Agerbrink*, 155 F. Supp. 3d at 456 ("To determine whether a proposed pleading is futile, courts analyze whether it would withstand a motion to dismiss."). SKAT's proposed amended complaints do not add any new claims against the current defendants and the Court has ruled that SKAT pleaded its existing claims against those defendants sufficiently. *See generally In re Skat Tax Refund Scheme Litig.*, 356 F. Supp. 3d 300 (S.D.N.Y. 2019). SKAT's claims against the new defendants are substantially similar to its claims against the current defendants.

13